IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 5:10-CR-17-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| STANLEY JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

On January 16, 2020, Stanley Johnson ("Johnson") moved for relief under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 [D.E. 21], and filed a memorandum and documents in support [D.E. 22, 22-1, 22-2, 22-3, 22-4, 22-5]. On January 30, 2020, the United States responded [D.E. 25]. On January 31, 2020, the probation officer submitted a modification memorandum concerning the Presentence Investigation Report ("PSR") [D.E. 29]. On the same date, Johnson objected to the modified PSR [D.E. 30]. On June 16, 2020, Johnson moved for compassionate release [D.E. 34]. As explained below, the court denies Johnson's motions.

I.

On February 8, 2010, pursuant to a written plea agreement, Johnson pleaded guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. § 846. See [D.E. 6, 8]. On June 25, 2010, the court held Johnson's sentencing hearing. See [D.E. 12, 13]. At the hearing, the court adopted the facts set forth in the PSR. See Fed. R. Crim. P. 32(i)(3)(A)–(B); [D.E. 32]. The court calculated Johnson's total offense level as 40, his criminal history category as III, and his advisory

guideline range as 360 months' to life imprisonment. See [D.E. 32] 1. After granting the government's downward departure motion and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Johnson to 204 months' imprisonment. See [D.E. 12, 13, 32]. Johnson did not appeal.

A.

As for Johnson's motion under the First Step Act, on August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2371, 2372 (codified as amended at 21 U.S.C. § 801, et seq.). Section 2 of the Fair Sentencing Act reduced statutory penalties by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of crack cocaine necessary to trigger a 5 to 40 year sentence increased from 5 to 28 grams. Likewise, the amount of crack cocaine necessary to trigger a 10 year to life sentence increased from 28 grams to 280 grams. See id., § 2, 124 Stat. at 2372.

The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See First Step Act § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. Under the First Step Act, a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see United States v. Woodson, 962 F.3d 812, 815–17 (4th

2

Cir. 2020); United States v. Chambers, 956 F.3d 667, 671 (4th Cir. 2020); United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019); United States v. Alexander, 951 F.3d 706, 708 (6th Cir. 2019). If a defendant qualifies, courts may consider a motion for a reduced sentence only if the defendant did not previously receive a reduction pursuant to the Fair Sentencing Act and did not have a motion under the First Step Act denied "after a complete review of the motion on the merits." First Step Act § 404(c), 132 Stat. at 5222.

Under the First Step Act, the district court adjusts the sentencing guideline calculations "as if the current lower drug offense sentences were in effect at the time of the commission of the offense." United States v. Curry, 792 F. App'x 267, 268 (4th Cir. 2020) (per curiam) (unpublished) (quotation omitted); see Chambers, 956 F.3d at 671–72. "Nothing in ... section [404(c) of the First Step Act]," however, "shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c), 132 Stat. at 5222; see, e.g., United States v. Gravatt, 953 F.3d 258, 260 (4th Cir. 2020); Wirsing, 943 F.3d at 184–86; United States v. Barnes, No. 3:94cr80 (DJN), 2020 WL 1281235, at *4 (E.D. Va. Mar. 17, 2020) (unpublished); United States v. Latten, No. 1:02CR00011-012, 2019 WL 2550327, at *1–4 (W.D. Va. June 20, 2019) (unpublished).

Johnson's advisory guideline range remains 360 months to life imprisonment based on a total offense level 40 and a criminal history category III. See [D.E. 29] 1–2.[1] The court has completely reviewed the entire record, the parties' arguments, the advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Mesa v. United States, 138 S. Ct. 1959, 1966–68 (2018); Chambers, 956 F.3d at 671–75; United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished). As for Johnson's offense conduct, Johnson engaged in serious criminal

---

[1] Under U.S.S.G. 2D1.1(c), Johnson's base offense level remains 38 based on 1,319,000.6925 kilograms of converted drug weight. See PSR ¶¶ 16, 42; [D.E. 29] 1–2.

3

behavior involving a leadership role in a 15-year drug conspiracy and was personally responsible for distributing a staggering 449 kilograms of cocaine and 344 kilograms of cocaine base (crack). See PSR ¶¶ 14–16. Moreover, Johnson participated in the conspiracy while he was on probation. See id. at ¶ 22. Additionally, Johnson has convictions for discharge a firearm in a city and driving while impaired. See id. at ¶¶ 18–19. Nonetheless, Johnson has taken some positive steps while incarcerated and has not sustained any disciplinary infractions. See [D.E. 29] 1–2; [D.E. 22-2, 22-3, 22-4]; cf. Pepper v. United States, 562 U.S. 476, 491 (2011); Chambers, 956 F.3d at 671–75. In light of Johnson's serious criminal conduct, criminal record, poor performance on probation, the need to promote respect for the law, the need to justly punish Johnson, and the need to incapacitate Johnson, the court declines to reduce Johnson's sentence. See, e.g., Chavez-Mesa, 138 S. Ct. at 1966–68; Chambers, 956 F.3d at 671–75; Barnes, 2020 WL 1281235, at *4; Latten, 2019 WL 2550327, at *1–4; 18 U.S.C. § 3553(a).

In reaching this decision, the court has considered the entire record, the parties' arguments, and the section 3553(a) factors. However, even if the court miscalculated the advisory guideline range, it still would not reduce Johnson's sentence in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012). Accordingly, the court denies Johnson's motion under the First Step Act.

B.

As for Johnson's motion for compassionate release, on December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of

4

the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of another person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

5

that "an extraordinary and compelling reason need not have been unforeseen at the time of

---

  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

6

Case 5:10-cr-00017-D   Document 38   Filed 08/07/20   Page 6 of 8

sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Nevertheless, section 1B1.13 provides applicable policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See, e.g., United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished). In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id.; Dinning v. United States, No. 2:12-cr-84, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) (unpublished).

Johnson seeks compassionate release pursuant to section 3582(c)(1)(A)(i). In support, Johnson relies on the medical condition policy statement in application note 1(A) to U.S.S.G. § 1B1.13. See [D.E. 34] 4. Specifically, Johnson asserts that his body mass index is "in the 'obese category,'" and when combined with his age, he is "at risk" for contracting COVID-19. See id.

Johnson does not assert that he has contracted COVID-19 and Johnson does not satisfy the medical condition policy statement in application note 1(A) to U.S.S.G. § 1B1.13. Moreover, his

7

health conditions are not "terminal." Thus, Johnson does not meet the medical condition policy statement.

As for the other reasons policy statement, the court assumes without deciding that the COVID-19 pandemic when coupled with Johnson's obesity meets the policy statement. The court must also address the factors under 18 U.S.C. § 3553(a) in deciding whether to grant Johnson's motion for compassionate release. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8; 18 U.S.C. § 3582(c)(1)(A). As discussed, the section 3553(a) factors counsel against granting compassionate release to Johnson. Moreover, the court is satisfied that the Bureau of Prisons is taking responsible and effective steps to address COVID-19. Accordingly, the court denies Johnson's motion for compassionate release.

III.

In sum, the court DENIES Johnson's motion under the First Step Act [D.E. 21] and Johnson's motion for compassionate release [D.E. 34].

SO ORDERED. This _7_ day of August 2020.

JAMES C. DEVER III
United States District Judge